May it please the Court, my name is Greg Wallace and I represent Garland Lott in this Social Security Disability Appeal and let me just say that I hope you don't get tired of listening to me this morning because that would be a bad deal for the three clients that I'm representing today. Mr. Lott is unable to work due to the combination of mild mental retardation, diabetes, extreme obesity, and psychotic disorder. Now the first two issues in this appeal involve Mr. Lott's mental retardation, one whether the ALJ should have sent Mr. Lott to a psychologist for IQ testing and the second, which is intertwined with the first, whether the ALJ properly discounted the effects of Mr. Lott's mental retardation. The third issue in the case involves the V.E. testimony, whether the ALJ properly relied on V.E. testimony when the V.E. identified jobs requiring detailed work instructions after the ALJ's hypothetical had specifically excluded jobs requiring detailed work instructions. Now with respect to Mr. Lott's mental retardation, the ALJ found at step two that Mr. Lott suffers from the severe impairment of mild mental retardation. Now we have no dispute with that finding, in fact Dr. Nichols, the only mental health professional to treat or examine Mr. Lott, came to that same conclusion, the ALJ must have based his step two finding on Dr. Nichols' diagnosis, his opinion. Dr. Nichols said that he believed that Mr. Lott is suffering, is functioning in the range of mild mental retardation for four reasons. Number one, he said he looked at his educational history. Second, he looked at the nature of his prior work. Third, he looked at his general level of adaptive functioning. And fourth, he considered the results of his mental status examination when he met with Mr. Lott. Now if Mr. Lott is suffering from mild mental retardation, then he could meet the requirements of listing 1205C for intellectual disability. It's not our position that he does meet those requirements. The 1205C, as you well know, requires additional and significant impairments here. There is extreme obesity, psychotic disorder. 1205C requires the deficits be in adaptive function, be initially manifested before age 22, but does not require, the regulations do not require contemporaneous evidence of that. There is evidence in the record that Mr. Lott was in special education classes. When he was in school, he only completed the tenth grade. He has difficulties with reading and math. The only thing missing here are the qualifying IQ scores. Under 1205C, you have to have IQ scores from 60 to 70. And it is our contention that the LJ, upon finding Mr. Lott, having the severe impairment of mild mental retardation, that he should have sent him out to a consultative examiner to perform IQ testing, to see if Mr. Lott, in fact, does meet listing 1205C. Apparently, the reason why the LJ didn't do that is because at step three, which is the step considering the listings, the LJ found that Mr. Lott does not meet the listings because of his own account of his adaptive functioning and because of his work history. Now, let me point out that there is an inconsistency here in the LJ's findings. He found at step two that he suffers from mild mental retardation. He finds at step three that apparently he doesn't suffer from mild mental retardation. So that inconsistency is never resolved in the LJ's opinion. But the LJ- What's the proper response for this court? A remand with what type of instruction? A remand with the instructions to send Mr. Lott out for IQ testing. Or we would be pleased with a remand simply for another ALJ to look at the whole issue of Mr. Lott's mild mental retardation. Remand obviously is not going to change Dr. Nichols' opinion that he is, in fact, suffering from mild mental retardation. So we're not asking for a remand for an award of benefits. We're just asking for a remand for reconsideration of this listing issue. And I think it would be very helpful for an ALJ to have some IQ scores in front of him. So your best remedy would be an order requiring the IQ testing? Yes, best remedy. But we'll take one just remanding for reconsideration at step three. Now- What is the IQ range for mild mental retardation? According to the DSM-IV, the IQ range is 55 to 70. And so if he is suffering from mild mental retardation, then he likely, and the IQ scores reflect that, then they will be somewhere in that range from 55 to 70, which would meet the 1205C listing. So just accepting a diagnosis of mild mental retardation, does your position is that's not enough to give the ALJ information about what the IQ range is? Well, that's enough to tip the ALJ off that he probably needed some IQ scores here to at least make a proper, a full and fair determination of whether he does meet listing 1205C. Because without those IQ scores, and 1205C requires the IQ scores, based on the bare diagnosis alone, that won't satisfy the listing. So if I understand correctly, you're saying a diagnosis of mild mental retardation would be under the regulations. Yes, by definition, mild mental retardation includes people with IQs of 55 to 70. And then they go on down with moderate and then extreme mental retardation. So yes, but we can't just imply from that diagnosis that his IQ scores would be within that 60 to 70 range. I guess we could, and that would be fine. But this court's never done that. There's no real authority for going that far. So the officer had, ALJ had said, had not been inconsistent. And at step three, it said, yes, still had mild retardation. You'd still need, you're saying, still need more. You need somebody to run an IQ test. Yes, yes. This court has said that the listing does not depend on a diagnosis of mild mental retardation at step three. And so I think the best thing is to have the IQ scores there. I mean, the listing specifically states that you have a valid IQ score of 60 to 70. And that's why if he had found, if he had not gone back and then tried to walk back in step three from what he found at step two here, he would have, he should have sent him out for IQ testing to get those scores. But the ALJ apparently at step three disputed the fact that Mr. Lott does indeed suffer from mild mental retardation. And he based it on two things. He based it on Mr. Lott's own account of his adaptive functioning. And he based it on Mr. Lott's work history. Now, those are two of the factors that Dr. Nichols said that he considered. He considered the nature of Mr. Lott's past work, and Mr. Lott has worked as a construction laborer, short order cook, menial job, furniture mover, all of which are menial jobs. So there's no real indication there that a person who is mildly retarded can't perform such jobs. In fact, the regulations at step three assume that a person who suffers only from mild mental retardation is not, does not meet a listing, is not automatically disabled. Because all of the listings dealing with mild mental retardation have something additional, some additional requirement, like 1205C has the requirement of an additional and significant impairment. So the mere fact that Mr. Lott has worked at some menial jobs in the past, Dr. Nichols considered that and did not, in his expert opinion, thought that that was more of an indication of his low intellectual functioning than something that contradicted it, as the ALJ found. The ALJ found also that Mr. Lott's adaptive functioning apparently, or in his view, suggested that Mr. Lott was not mildly retarded. Now, the ALJ didn't cite activities like, well, he'd gotten a college degree, or he was a rocket scientist, or he supervised people at work. Rather, the activities that the ALJ cited here was, well, he can take care of his own personal grooming, he can clean the house, he can shop, he can do laundry, he can take a bus, he can ride a bus, he can use a post office. Now, I don't know, but these are the very same activities that Dr. Nichols thought illustrated that he was functioning at a lower intellectual level. And the ALJ provided no evidence that a person who is mildly retarded can't walk into a post office and buy stamps or mail a letter or take a shower or buy a bus ticket and take the bus, attending church, playing basketball with friends. These are activities that the mildly retarded certainly can perform. And I would be interested in whether the government has any evidence that the mildly retarded cannot perform these kinds of activities. Because these are the very rudimentary activities of daily living that the ALJ relied on to say that Mr. Lott's not mentally retarded. Now, Dr. Nichols came to the exact opposite conclusion. And he's the only mental health professional to treat or examine Mr. Lott in the record. There's no contrary medical evidence from other treating or examining doctors. And it's our contention that the ALJ's assumptions that the mildly retarded can't perform such rudimentary activities of daily living are in direct conflict with Dr. Nichols' opinion in that brief. And we provided in our briefs ample citation to judicial authority indicating that these kinds of activities do not, in fact, show that a person is not mildly retarded. Now, the last issue in the case here, it has to do with the vocational expert testimony. And in this case, the ALJ posed a hypothetical to the VE which limited the VE's consideration to jobs requiring simple work instructions but not detailed work instructions. And the two jobs that the VE identified both require the ability to understand, remember, and follow detailed work instructions. Now, I know the government's relying on the Moore versus Astru case. But in that case simply holds that when an ALJ limits a person generally to simple work, the simple work can include detailed work instructions. But in this particular case here, the ALJ specifically excluded detailed work instructions. And so in that case, I think it takes it out of the Moore versus Astru case, and it creates a conflict between the VE's testimony and the DOT that was left unresolved in the record. And for these reasons, we ask that this court reverse the ALJ's decision in this case and remand the case to the commissioner. Thank you. Thank you very much. Okay, Ms. McGeehan? Good morning. Morning. May it please the court? My name is Una McGeehan, and I represent the acting commissioner of Social Security. You're going to have to speak up. I'm sorry. Get closer to the mic. By the way, that lectern goes up and down if you- Okay, can you hear me? Okay. Excuse me. My name is Una McGeehan, and I represent the acting commissioner of Social Security, Carolyn Colvin. I'd like to start by addressing Professor Wallace's argument that there was an inconsistency between the ALJ's finding at step two that Mr. Lott had a severe mild mental retardation, and that that's somehow inconsistent with finding at step three that he doesn't meet the listing. At step two, it's a de minimis standard. It just means that a person's impairment more than minimally interferes with their ability to do basic work activity. So even though the ALJ found that Mr. Lott's mild mental retardation was a severe impairment at step two, that doesn't mean that it meets the criteria at 1205C for mental retardation. And I would just also point out that the commissioner now uses the term intellectual disability instead of mental retardation, but because the record refers to that term, I will use that term as well. And with respect to remanding this case for IQ scores, there really wouldn't be any benefit for that because in this case, in order to meet 1205C, there are three requirements. The first is known as the introductory paragraph criteria, which requires significantly sub-average intellectual functioning and deficits in adaptive functioning prior to age 22. That's the first requirement. The second is a valid IQ score between 60 and 70. And the third is a physical or other mental impairment imposing a significant work-related limitation. And the Marish case, which this court knows and I cited in my brief, says that the first requirement, the deficits in adaptive functioning is required in order to meet 1205C. So even if you had an IQ score between 60 and 70, that does not mean that you would meet the first criteria of listing 1205C. That's why ALJ can find a person has mental retardation, has a severe impairment, but they don't necessarily meet the 1205C criteria. So are you saying it wouldn't matter what the IQ was? I'm not saying it wouldn't matter. I'm saying even if he had an IQ score, he still wouldn't be able to show deficits in adaptive functioning. And I can explain why there's sufficient evidence in the record that the ALJ doesn't need to further develop the record by obtaining IQ scores. Can I ask a question about accepting the diagnosis of mild mental retardation? Is that essentially the first two steps that you've described? Is that what is traditionally known as mental retardation and then under 1205C, there's then the third requirement to actually get disability benefits? Is that how I read that? Am I reading it correctly? Well, there's really three requirements. Mental retardation is defined as the sub-average intellectual functioning and deficits in adaptive functioning prior to age 22. And in order to meet listing 1205C, you have the two other prongs, which are the IQ score between 60 and 70 and the physical or other mental impairment. So there's really three. So does the definition of mental retardation include an IQ score? So in other words, when the ALJ accepted a diagnosis of mild mental retardation, was that also accepting an IQ score range? Presumably, but in this case, there are no IQ scores. He was just crediting Dr. Nichols' opinion that based on Dr. Nichols' diagnosis of mild mental retardation, he found that that was a severe impairment, but it does not mean that he meets listing 1205C. And I'm sorry if I keep asking the same question in a different way, but to get a diagnosis for mild mental retardation, do you have to have an IQ estimate? Usually, yes. But in this case... Independent of Social Security, just as a matter of diagnosis. As a matter of diagnosis, yes, yes. But do we have one here in the diagnosis? No, we- Did anybody took an IQ test? No, there are no IQ scores. Why isn't that something that the ALJ should have developed? I mean, it's the government's burden to develop the record and reach the... The ALJ must have accepted there was mild mental retardation. So why, and then look at the record and say, well, wait a minute, I don't have an IQ test, maybe I should get one. Well, in this case, the ALJ was looking at the deficits in adaptive functioning, which is a requirement of 1205C. And I'd like to point out that although Mr. Lott is relying on the report of Dr. Nichols, the consultative examiner, there's two important things about that report. He found even with the diagnosis of mental retardation, he limited Mr. Lott to simple work. He still found he could do simple work. And in Dr. Nichols' report, he found evidence of symptom exaggeration, and he noted that Mr. Lott gave minimal effort on testing, which indicates that Mr. Lott may be capable of even greater ability than what was indicated in Dr. Nichols' examination. And I would also point- Let me ask also on this, it has to occur before 22. Wasn't his record of school some indication that this mental retardation, whatever IQ level it was, that's some evidence that it occurred early? Not in this case, Your Honor, because he was only in special education in two classes, in math and science. And even though Mr. Lott says he had trouble reading, he was not in special ed in reading or English. And in addition, the ALJ noted that Mr. Lott was able to work for most of his adult life, and he wasn't in necessarily menial jobs, as Professor Wallace notes. He worked as a short order cook on two different occasions, which is semi-skilled work, and has a reasoning level of three, which is at a higher reasoning level than the jobs the ALJ found that Mr. Lott could perform. And he, not only, after he filed his application for disability benefits, he returned to work as a short order cook from February 2011 to December 2011, and he testified that he stopped working as a short order cook for reasons unrelated to his mental impairment. And he also testified that his employer didn't have to make any special accommodation for him in order to be able to do that job. And he... Wasn't there an issue that he was terminated because he couldn't follow the rules? That was in 2009. He testified that it was his diabetes that... Well, he said he wasn't following policies in 2011. That was why he stopped working as a short order cook. In 2009, he said he stopped working because of his impairment, but he indicated that the main reason why he wasn't working was because of his diabetes, and he testified to that at the hearing. The other thing I would point out is the daily activities. Professor Wallace indicated that he had very rudimentary activities. And in Mr. Lott's adult function report, he described doing a variety of activities, cooking, cleaning, taking care of pets. He was able to monitor his own blood sugar, give himself insulin. He testified in his adult function report. He indicated that when he was physically able to, he coached a Little League team. And his sister-in-law completed an adult function report, and she indicated that he was also capable of these activities. So based on these activities, the ALJ found that he did not have the deficits in adaptive functioning necessary to meet 1205C. And with respect to the special education, as the district court noted, simply being special education in and of itself doesn't indicate that a person has deficits in adaptive functioning. A person can have dyslexia and be in special education and still not have deficits in adaptive functioning. And that's really what Professor Wallace is relying on, is the fact that Dr. Nichols diagnosed him with mild mental retardation, and Mr. Lott was in special education. But Dr. Nichols' opinion is somewhat qualified because he found symptom exaggeration and testing. So this court noted in Marish that you can consider a person's ability to work when considering whether or not they meet, whether or not they have deficits in adaptive functioning. And with respect to the second issue, whether or not there was a conflict between the VE and the DOT, Dictionary of Occupational Titles. It's important to note that the ALJ did find that Mr. Lott was limited to simple, not detailed or complex instructions. But the VE identified jobs with a reasoning level of two, which is defined as the ability to carry out detailed but uninvolved instructions. And in the Moore case, this court noted that there was no direct conflict between somebody who was able to perform simple work and somebody who could do jobs with a reasoning level of two. And in this case, based on Mr. Lott's past work history at a reasoning level of three, the short order cook job, he would be able to perform the jobs of silver wrapper and marker, which have a reasoning level of two. Those were the two jobs that the VE identified at the hearing. So in the Jones case, this court noted that somebody who has the ability to do past work, based on a person's ability to do past work, they would be able to perform jobs with a similar reasoning level. Or in this case, he had an even greater reasoning level based on his two different stints working as a short order cook, which has a reasoning level of three, which is a higher reasoning level. So just in conclusion, I would point out, there was no real inconsistency between the ALJ finding mild mental retardation was a severe impairment and not meeting 1205C. Because at step two, it's a de minimis standard. At step three, it's whether or not you meet those three requirements. And in the Marish case, it points out that having deficits in adaptive functioning is a requirement in order to meet listing 1205C. So there was no inconsistency between the ALJ finding severe mental retardation, but that it's not at listing level criteria. And there was no conflict between the VE's testimony and the DOT based on the Moore case. And even if this court were to find that there was a conflict, in this case, based on Mr. Lott's ability to work as a short order cook in the past, supports the be able to perform jobs with a reasoning level of two, because it's at a lower exertional level. Are there any other questions? I guess not, thank you. Thank you for your time. Does Professor Wallace have any time? Yes, your honor. Okay, about a minute and a half. Mr. Wallace, would you address the suggestion by the government that your client's ability to perform work at level three militates against him being disabled? Yes, the short order cook is a low semi-skilled job. It has the specific vocational preparation SVP of three. An SVP of two is unskilled work. SVP of three to, I think, six or so is semi-skilled work. It is the lowest category of semi-skilled work. Plus, reasoning level three, as this court is fond of saying, in many cases, the DOT requirements represent the maximums. And without any kind of information about what type of short order cook, this, again, is not rocket science. Short order cooks, in the situation in which he worked, could have required a lot less type of reasoning. So it's not that every short, that he automatically performed his short order cook at reasoning level three. That's the maximum under the DOT, but does not necessarily mean it was the level at which he performed it in the past. As this court has pointed out. The, I guess, I'll stop. If you had, I'll give you one comment. One comment. The, there is a inconsistency between the ALJ's finding at step two and three. Because mild mental retardation, that diagnosis assumes significant sub-average intellectual functioning. You can't have one without the other. Thank you. Thank you both for your arguments, both written and oral form. And we will take it under advisement.